Angel Cintron **RODRIGUEZ**,
Petitioner–Appellant,

v.

**J.D. LAMER, Respondent–Appellee.**

No. 92–3142.

United States Court of Appeals,
Eleventh Circuit.

Aug. 4, 1995.

Bruce Culpepper, Tallahassee, FL, for appellant.

Anthony J. Jenkins, Asst. U.S. Atty., Dept. of Justice, Gainesville, FL, for appellee.

Before COX, Circuit Judge, RONEY and HARLINGTON WOOD, Jr.*, Senior Circuit Judges.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Angel Cintron Rodriguez appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The district court denied the petition after concluding that Mr. Rodriguez was not entitled to 487 days credit towards the service of his sentence under 18 U.S.C. § 3585(b) for the time that he had spent at his home under pre-trial, restrictive conditions. For the reasons given below, we affirm the district court's denial of Mr. Rodriguez's petition.

## I. BACKGROUND

Mr. Rodriguez was arrested on September 16, 1988, and charged with committing several drug and firearms-related offenses. On September 29, 1988, he was conditionally released, pending his trial, on a $60,900 bond. The conditions of his pre-trial release required him to obey an in-home curfew from 8:00 p.m. to 6:00 a.m.; he was also to wear an electronic monitoring device at all times to ensure his compliance with the curfew. He could leave his residence for any reason during non-curfew hours, but he was required to obtain written permission before leaving the jurisdiction of the district court or before entering any airport, pier or dock. In addition, Mr. Rodriguez was required to submit to blood and urinalysis tests upon demand.

Mr. Rodriguez was subsequently sentenced to a five-year term of imprisonment after pleading guilty to using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Once incarcerated, he formally requested the Bureau of Prisons ("BOP") to credit the 487 days he had spent in pre-trial home confinement toward the service of his sentence pursuant to 18 U.S.C. § 3585(b). Section 3585(b) provides:

Credit for prior custody.

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in *official detention* prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

(emphasis added).[1] Mr. Rodriguez argued that home confinement constitutes a form of "official detention" under § 3585(b). Pursuant to its contrary interpretation of § 3585(b), the BOP denied his request for sentencing credit.

Mr. Rodriguez then filed a petition for a writ of habeas corpus. In his petition, he raises both a statutory and a constitutional argument. First, he argues that home confinement constitutes "official detention" within the meaning of 18 U.S.C. § 3585(b), thus entitling him to sentencing credit. Second, he argues that denying him credit for time served in home confinement violates his right to equal protection as other, allegedly similarly situated, individuals are given sentence credit. A magistrate judge recommended that Mr. Rodriguez's petition be denied and

---

* Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Section 3585(b) was enacted as part of the Sentencing Reform Act of 1984; effective November 1, 1987, it replaced 18 U.S.C. § 3568. *See United States v. Lucas,* 898 F.2d 1554, 1554–55 & n. 1 (11th Cir.1990) (per curiam). Section 3568 had provided in pertinent part:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in *custody* in connection with the offense or acts for which sentence was imposed.

18 U.S.C. § 3568 (repealed) (emphasis added).

We had previously interpreted the "in custody" language of § 3568 as requiring actual incarceration. *See Spinola v. United States,* 941 F.2d 1528, 1529 (11th Cir.1991) (per curiam) (holding that time spent on a highly restricted appellate bond did not entitle a federal prisoner to sentencing credit).

the district court adopted the recommendation. This appeal followed.

## II. STANDARD OF REVIEW

▮ As we recently re-stated in *Dawson v. Scott*, 50 F.3d 884 (11th Cir.1995), the Attorney General—acting through the BOP—initially possesses the exclusive authority under the law of this Circuit to compute sentence credit awards after sentencing. *Id.* at 889 (citations omitted). Therefore, an inmate must typically exhaust his or her administrative remedies with the BOP before seeking judicial relief. *See, e.g., Lucas,* 898 F.2d at 1556. It is unclear to us on this record whether Mr. Rodriguez has exhausted his administrative remedies, but as the United States has not raised an objection, we regard as waived any objection that the United States may have been able to raise on this ground. *See United States v. Woods,* 888 F.2d 653, 654 (10th Cir.1989) (citations omitted), *cert. denied,* 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990).

▮ We subject the district court's factual findings to the clearly erroneous standard of review. *Centel Cable Television Co. of Fla. v. White Dev. Corp.,* 902 F.2d 905, 908 (11th Cir.1990) (citation omitted). We review *de novo* the district court's interpretation of a statute. *Id.* (citation omitted).

In regard to the BOP's decisions concerning the award of sentencing credit, the judiciary retains the final authority on matters of constitutionality and statutory construction.[2] *E.g., Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984). Where an administrating agency's construction of a statute is at issue, however, a deferential " 'two-step process' " of review has been established. *Dawson,* 50 F.3d at 886 (quoting *Jaramillo v. I.N.S.,* 1 F.3d 1149, 1152 (11th Cir.1993) (en banc)).

First, if congressional purpose is clear, then interpreting courts and administrative agencies "must give effect to the un-ambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781.

A second level of review, however, is triggered when "the statute is silent or ambiguous with respect to the specific issue." *Id.* at 843, 104 S.Ct. at 2782. Where an administrating agency has interpreted the statute, a reviewing court is bound by the *Chevron* "rule of deference." *Jaramillo,* 1 F.3d at 1152. "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation" by an administrating agency. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. Agency interpretation is reasonable and controlling unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.; Alabama Power Co. v. Federal Energy Regulatory Comm'n,* 22 F.3d 270, 272 (11th Cir.1994). Thus, "we defer to an agency's reasonable interpretation of a statute it is charged with administering." *Bigby v. United States I.N.S.,* 21 F.3d 1059, 1063 (11th Cir.1994).

*Dawson,* 50 F.3d at 886–87.

## III. DISCUSSION

### A.

▮ Mr. Rodriguez first argues that the correct interpretation of "official detention" under 18 U.S.C. § 3585(b) includes time spent under "house arrest." He primarily focuses on the plain meaning of the words "official" and "detention" and argues: (1) that the district court was acting in an official capacity when it subjected him to home confinement; and (2) that being confined to one's home, if even for a portion of each day, constitutes a cognizable form of detention. While this position is not untenable, the Supreme Court recently addressed the proper interpretation of § 3585(b) and its holding controls our decision of this matter.

In *Reno v. Koray,* —— U.S. ——, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), which was decid-

---

2. The judiciary retains the last word on this matter notwithstanding the expansive language in *Dawson's* concluding paragraph. *See* 50 F.3d at 895 ("[T]he determination of sentence credit is solely within the discretion of the BOP and not the judiciary."). This language was merely intended to summarize the limited nature of the judiciary's *initial* role in determining sentencing credit.

ed after oral argument in this case, the Court held that confinement in a community treatment center pending sentencing, under conditions much more restrictive than those imposed upon Mr. Rodriguez,[3] did not constitute "official detention" under § 3585(b).[4] The Court reasoned:

> Section 3585(b) ... mak[es] clear that credit is awarded only for presentence restraints on liberty. Because the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, is the body of law that authorizes federal courts to place presentence restraints on a defendant's liberty, ... the "official detention" language of § 3585(b) must be construed in conjunction with that Act.

> . . . . .

> The Bail Reform Act of 1984 provides a federal court with two choices when dealing with a criminal defendant who has been "charged with an offense" and is awaiting trial, 18 U.S.C. § 3142(a).... The court may either (1) "release" the defendant on bail or (2) order him "detained" without bail. A court may "release" a defendant subject to a variety of restrictive conditions.... If, however, the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," § 3142(e), the court "shall order the detention of the person," *ibid.*, by issuing a "detention order" "direct[ing]" that the person be committed to the custo-

dy of the Attorney General for confinement in a corrections facility." § 3142(i)(2). Thus, under the language of the Bail Reform Act of 1984, a defendant suffers "detention" only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions, like respondent was, is "released."

—— U.S. at ——, 115 S.Ct. at 2025 (citations omitted).

Mr. Rodriguez was not in the custody of the Attorney General during the period of his pre-trial release; *Koray* consequently compels us to find that he was "released" on bail within the meaning of the Bail Reform Act of 1984 during that period. Therefore, the time Mr. Rodriguez spent under restrictive pre-trial release conditions does not constitute "official detention" within the meaning of 18 U.S.C. § 3585(b) and he is not entitled to sentencing credit. *Koray*, —— U.S. at —— ——, 115 S.Ct. at 2028–29.

## B.

 Mr. Rodriguez also argues that the BOP's denial of his request for sentencing credit violates his right to equal protection. His argument hinges upon the fact that other individuals subjected to home confinement do receive sentencing credit. In particular, Mr. Rodriguez references those persons who serve periods of home confinement pursuant to U.S.S.G. § 5C1.1.[5]

---

**3.** After the defendant had pleaded guilty to laundering monetary instruments in violation of 18 U.S.C. § 1956(a)(1), he was released on bail pending sentencing and ordered to "be 'confined to [the] premises' of a Volunteers of America community treatment center without 'authoriz[ation] to leave for any reason unless accompanied' by a Government special agent." —— U.S. at ——, 115 S.Ct. at 2023 (quoting magistrate judge's release order).

**4.** A similar result had been previously reached by a majority of the courts of appeals. *See, e.g., Fraley v. United States Bureau of Prisons,* 1 F.3d 924, 926 (9th Cir.1993) (per curiam); *United States v. Edwards,* 960 F.2d 278, 283 (2d Cir. 1992); *Pinedo v. United States,* 955 F.2d 12, 14 (5th Cir.1992) (per curiam); *United States v. Wickman,* 955 F.2d 592, 593 (8th Cir.1992) (en banc) (per curiam); *United States v. Becak,* 954 F.2d 386, 387–88 (6th Cir.), *cert. denied,* 504 U.S.

945, 112 S.Ct. 2286, 119 L.Ed.2d 211 (1992); *United States v. Zackular,* 945 F.2d 423, 425 (1st Cir.1991); *United States v. Insley,* 927 F.2d 185, 186 (4th Cir.1991); *Woods,* 888 F.2d at 655.

We recently reached substantially the same result ourselves in *Dawson:* "[W]e have joined other circuits that have determined that custody or official detention time is not credited toward a sentence until the convict is imprisoned, and that release stipulations or imposed conditions that do not subject a person to full physical incarceration do not qualify as official detention." 50 F.3d at 888 (citations and footnote omitted).

**5.** Under the current version of § 5C1.1, a term of imprisonment may be satisfied in whole, or in part, by home detention where the applicable guideline range does not exceed twelve, or sixteen, months of imprisonment. U.S.S.G. § 5C1.1(c)-(d). In such cases, each day of home confinement constitutes one day of imprisonment. U.S.S.G. § 5C1.1(e)(3).

Mr. Rodriguez's argument falls short, however, as it lacks a prerequisite element: "A preliminary step in equal protection analysis is to determine whether persons who are similarly situated are subject to disparate treatment." *Johnson v. Smith,* 696 F.2d 1334, 1336 (11th Cir.1983). Turning to those individuals who receive sentencing credit for periods of home confinement pursuant to U.S.S.G. § 5C1.1, we note that they have been convicted, sentenced, and placed in the custody of the BOP prior to their subjection to home confinement. Mr. Rodriguez, on the other hand, was not in the BOP's custody during the period of his pre-trial home confinement. Despite the fact that the circumstances of Mr. Rodriguez's confinement may have been similar to these other individuals' confinement, there nonetheless exists a genuine legal distinction. As the Supreme Court explained:

> Unlike defendants "released" on bail, defendants who are "detained" or "sentenced" always remain subject to the control of the [BOP]. This is an important distinction, as the identity of the custodian has both legal and practical significance. A defendant who is "released" is not in BOP's custody, and he cannot be summarily reassigned to a different place of confinement unless a judicial officer revokes his release, see 18 U.S.C. § 3148(b), or modifies the conditions of his release, see § 3142(c)(3). A defendant who is "detained," however, is completely subject to BOP's control. And "[t]hat single factor encompasses a wide variety of restrictions." "Detained" defendants are subject to BOP's disciplinary procedures; they are subject to summary reassignment to any other penal or correctional facility within the system, and, being in the legal custody of BOP, the Bureau has full discretion to control many conditions of their confinement.

*Koray,* —— U.S. at ——, 115 S.Ct. at 2028 (quoting *Randall v. Whelan,* 938 F.2d 522, 525 (4th Cir.1991) (other citations omitted)).

Home confinement under U.S.S.G. § 5C1.1 is imposed pursuant to a criminal conviction and is designed to either punish or rehabilitate the convict. Persons who are released under restrictive conditions pending their trial or their sentencing, on the other hand, are not being punished or rehabilitated;[6] the restrictive release conditions imposed upon these defendants are merely designed to ensure their later appearance in court and to safeguard the community. *See* 18 U.S.C. § 3142(c).

In other words, the " 'significantly different legal conditions' " underlying Mr. Rodriguez's pre-trial, non-custodial status as compared to the post-sentence status of the individuals to whom Mr. Rodriguez attempts to compare himself are sufficient to frustrate a "similarly situated" finding. *Dawson,* 50 F.3d at 895 (quoting *Moreland v. United States,* 968 F.2d 655, 661 (8th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992)).

> [I]t is not the type of detention, but the respective difference in legal status that is dispositive. The consequent divergent sentence credit treatment results directly from the different legal status occupied by pretrial, presentence defendants and post-sentence convicts. Therefore, the BOP does not violate equal protection in according sentence credit to postsentence convicts, but not to pretrial or presentence defendants.

*Id.* at 895 (citation omitted).

Since Mr. Rodriguez has failed to demonstrate that he is similarly situated to the individuals who do receive sentencing credit for home confinement, we need not address whether there exists a rational reason[7] for the disparity.

---

6. While it is true that those persons who *are* in "official detention" within the meaning of 18 U.S.C. § 3585(b) prior to the commencement of *their* sentences are *not being punished or rehabilitated either,* Congress has determined that these individuals should receive sentencing credit if that time has not been credited against another sentence. *See Edwards,* 960 F.2d at 284 n. 4.

7. Mr. Rodriguez argues that the more stringent "strict scrutiny" standard should be applied in this case. However, strict scrutiny is properly applied only where the *legislative disparity* involves a suspect class, or trammels upon personal rights protected by the Constitution. *See Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d

## IV. CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

AFFIRMED.

313 (1985). As we have previously held, neither of these concerns is involved in a case of this sort. *See Dawson*, 50 F.3d at 892 ("Because neither a suspect nor a quasi-suspect class is involved [in the decision to award sentencing credit to a convict serving his sentence in a halfway house and to deny such credit to a pretrial, pre-sentence defendant], we review this governmental decision for a rational basis.") (citations omitted); *Johnson v. Smith*, 696 F.2d 1334, 1339 n. 6 (11th Cir.1983) ("[T]here is no absolute federal constitutional right to credit for pre-sentence custody.") (citations omitted).