**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-12222

Non-Argument Calendar

————————————

MARGARITO RAMIREZ-AGUILAR,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A097-138-240

————————————

Before ROSENBAUM, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

Margarito Ramirez-Aguilar petitions for review of the order of the Board of Immigration Appeals (BIA) dismissing his appeal of an immigration judge's (IJ) order finding him removable under

8 U.S.C. § 1227(a)(2)(C), and ineligible for cancellation of removal under 8 U.S.C. § 1229b(a).  He contends the BIA erred in finding him ineligible for cancellation of removal as having been convicted of an "aggravated felony" under the Immigration and Nationality Act (INA) based on his conviction of aggravated assault with a deadly weapon and sentence to two years of community control under Florida law.  After review,[1] we deny his petition.

## I.  BACKGROUND

In 2004, Ramirez-Aguilar, a native and citizen of Mexico, was placed in removal proceedings.  An IJ granted him discretionary relief of cancellation of removal and adjusted his status to lawful permanent resident.

In January 2023, Ramirez-Aguilar was convicted in Florida State court of aggravated assault with a deadly weapon, in violation of Fla. Stat. § 784.021, and possession of a firearm with an altered serial number, in violation of Fla. Stat. § 790.27.  The Florida court sentenced him to two years of community control under the su-

---

[1] We are precluded from reviewing any final order of removal against an alien who is removable for having committed certain firearm offenses.  8 U.S.C. §§ 1252(a)(2)(C); 1227(a)(2)(C).  Despite that jurisdictional bar, we retain jurisdiction over constitutional claims or questions of law raised in a petition for review. 8 U.S.C. § 1252(a)(2)(D); *Balogun v. U.S. Att'y Gen.*, 425 F.3d 1356, 1359-61 (11th Cir. 2005).  We review de novo questions of law, such as questions of statutory interpretation and whether the petitioner's conviction qualifies as an aggravated felony.  *See Lopez-Martinez v. U.S. Att'y Gen.*, 149 F.4th 1202, 1207 (11th Cir. 2025); *Herrera v. U.S. Att'y Gen.*, 811 F.3d 1298, 1300 (11th Cir. 2016).

pervision of the Florida Department of Corrections for the aggravated assault conviction. This two-year sentence of community control required Ramirez-Aguilar to "remain confined to [his] approved residence except for one half hour before and after [his] approved employment, public service work, or any other special activities approved by [his] officer."

In May 2024, the Department of Homeland Security issued Ramirez-Aguilar a Notice to Appear asserting that he was removable under 8 U.S.C. § 1227(a)(2)(C) for having been convicted of a removable firearms offense. Ramirez-Aguilar, through counsel, admitted his conviction, but denied the removability charge. He contended his 24-month community control sentence for his aggravated assault conviction was not incarceration for purposes of his eligibility for cancellation of removal. The IJ determined that Ramirez-Aguilar's aggravated assault conviction met the definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F) because it was a "crime of violence" for which Ramirez-Aguilar was sentenced to a "term of imprisonment" of at least one year, and that Ramirez-Aguilar was ineligible for cancellation of removal.

Ramirez-Aguilar appealed the decision to the BIA, challenging the IJ's determination that his sentence of community control under Florida law constituted a "term of imprisonment" under the INA. The BIA dismissed Ramirez-Aguilar's appeal and affirmed the IJ's entry of an order of removal against him. The BIA concluded that Ramirez-Aguilar's sentence of community control was a term

of imprisonment within the meaning of the INA "[g]iven the restrictions on the respondent's liberty."

## II.  DISCUSSION

The Attorney General may cancel removal in the case of an alien who is removable from the United States if the alien: (1) has been an alien lawfully admitted for permanent residence for not less than five years; (2) has resided in the United States continuously for seven years after having been admitted in any status; and (3) has not been convicted of an "aggravated felony."  8 U.S.C. § 1229b(a).  The term "aggravated felony" means, among other things, a "crime of violence" (as defined in 18 U.S.C. § 16) for which the alien was sentenced to a "term of imprisonment" of at least one year.  8 U.S.C. § 1101(a)(43)(F).  "Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration *or* confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part."  8 U.S.C. § 1101(a)(48)(B) (emphasis added).

In *Herrera v. United States Attorney General*, the petitioner had been convicted of burglary in Georgia and sentenced to "confinement for a period of [five] years," which he was allowed to serve on probation if he served one year under house arrest.  811 F.3d 1298, 1299 (11th Cir. 2016).  The BIA determined that Herrera's offense was an "aggravated felony" rendering him ineligible for cancellation of removal because it resulted in a qualifying "term of imprisonment," explaining the Georgia court used "confinement"

to mean imprisonment alternative to house arrest, and the one year of house arrest itself constituted a form of confinement that satisfied the definition of "aggravated felony." *Id.* at 1300. In denying Herrera's petition for review, we reasoned the INA defines a "term of imprisonment" as a "period of incarceration *or* confinement." *Id.* (quoting 8 U.S.C. § 1101(a)(48)(B)) (emphasis added in *Herrera*). The disjunctive "or" reinforced that "confinement" meant something other than "incarceration." *Id.* at 1301; *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."). Further, we reasoned that "a 'term of imprisonment . . . includes . . . any suspension of the imposition or execution of . . . [a] sentence,' 8 U.S.C. § 1101(a)(48)(B), which suggests that it must encompass 'more than just time spent in jail.'" *Herrera*, 811 F.3d at 1301 (citing *Ilchuk v. Att'y Gen. of the U.S.*, 434 F.3d 618, 623 (3d Cir. 2006)). We also explained the federal understanding of house arrest shared similarities with imprisonment, such that the BIA "reasonably concluded" that house arrest was a "punitive measure that involves a 'serious restriction of liberty'" that constituted confinement and was a term of imprisonment under the INA. *Herrera*, 811 F.3d at 1301 (quoting *Ilchuk*, 434 F.3d at 623). We concluded, "Herrera's burglary offense, for which he was sentenced to a term of imprisonment [of] at least one year, qualified as an aggravated felony and made him ineligible for cancellation of removal." *Id.* (quotation marks omitted).

Ramirez-Aguilar's argument is foreclosed by this Court's holding in *Herrera* that house arrest constitutes imprisonment under the INA's definition of an aggravated felony. *Herrera*, 811 F.3d at 1300-01. First, Ramirez-Aguilar has failed to distinguish community control from house arrest for purposes of *Herrera*'s applicability. Under Florida law, community control is defined as "a form of intensive, supervised custody in the community" and "is an individualized program in which the freedom of an offender is restricted within the community, home, or noninstitutional residential placement and specific sanctions are imposed and enforced." Fla. Stat. § 948.001(3). Ramirez-Aguilar's community control confined him to his residence except for employment, public service work, or other officer-approved activities. Additionally, we have stated that community control is "a form of in-house arrest." *Anderson v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 881, 885 (11th Cir. 2014) (describing criminal history of federal habeas appellant). Because of Florida's legal definition of community control, and this Court's interpretation of community control, Ramirez-Aguilar's sentence of two years of community control is subject to *Herrera*'s holding that house arrest constitutes a term of imprisonment under the INA. *See Herrera*, 811 F.3d at 1300-01; *Anderson*, 752 F.3d at 885; Fla. Stat. § 948.001(3).

Second, this Court's discussion in *Herrera* about house arrest constituting imprisonment under the INA is not dicta. Ramirez-Aguilar argues that *Herrera* could have been resolved without determining whether house arrest constituted a term of imprison-

ment under the INA because the non-house arrest portion of Herrera's sentence would have constituted a term of imprisonment or because Herrera's sentence could be characterized as a suspended term of incarceration in prison. However, *Herrera* was decided based on house arrest constituting a term of imprisonment. *Herrera*, 811 F.3d at 1300-01. This Court reported the non-house arrest portion of Herrera's sentence, but its entire analysis related to whether house arrest constituted imprisonment under the INA, which was necessary to reach its conclusion. *See id.* at 1299-1301. Thus, *Herrera*'s conclusion that house arrest is a term of imprisonment under the INA is binding on this Court under the prior panel precedent rule. *See United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (stating the "prior panel precedent rule applies only to holdings, not dicta in our prior opinions," and "[t]he holding of a case comprises both the result of the case and those portions of the opinion necessary to that result" (quotation marks omitted)); *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (stating under the prior panel precedent rule, we are bound to follow a prior panel's holding unless and until it is overruled or undermined to the point of abrogation by an opinion of the Supreme Court or of this Court sitting en banc).

Additionally, Ramirez-Aguilar's argument that *Herrera* is not binding because it relies on *Chevron*[2] fails because, as Ramirez-Aguilar concedes, the Supreme Court in *Loper Bright* states that its decision did not "call into question prior cases that relied on the *Chevron* framework." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Moreover, although this Court in *Herrera* explained generally that the BIA's reasonable interpretation of an ambiguous statute is entitled to deference, this Court did not discuss deference specifically or whether 8 U.S.C. § 1101(a)(48)(B) was ambiguous. *See Herrera*, 811 F.3d at 1300. Rather, this Court applied ordinary tools of statutory construction, notwithstanding its reference to the BIA's "reasonabl[e] conclu[sion]," in determining that Herrera was sentenced to a term of imprisonment because of his house arrest. *See id.* at 1300-01.

Finally, even if *Herrera* did not foreclose his argument, Ramirez-Aguilar's community control sentence is still a "term of imprisonment" of at least one year based on a plain reading of the statute. *See* 8 U.S.C. § 1101(a)(48)(B). The definition of a "term of imprisonment" refers to a period of "incarceration *or* confinement," suggesting that "confinement" has a different and broader

---

[2] Under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), courts were "sometimes required . . . to defer to 'permissible' agency interpretations of the statutes those agencies administer[ed]." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 378 (2024). However, the Supreme Court overruled *Chevron* in *Loper Bright* and held that "courts need not and under the [Administrative Procedure Act] may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413.

meaning than "incarceration," just as this Court held in *Herrera*. *See* 8 U.S.C. § 1101(a)(48)(B) (emphasis added); *Herrera*, 811 F.3d at 1301; *see also Reiter*, 442 U.S. at 339. The definition also includes "any suspension of the imposition or execution of that imprisonment *or* sentence," again supporting that a "term of imprisonment" under the INA includes more than just being held in prison, as this Court in *Herrera* also held. *See* 8 U.S.C. § 1101(a)(48)(B) (emphasis added); *Herrera*, 811 F.3d at 1301; *see also Reiter*, 442 U.S. at 339.

Further, the dictionary definitions of "incarceration" and "confinement" support that "confinement" encompasses more than being held in prison. At the time of the relevant expansion of the INA's definition of "aggravated felony," Black's Law Dictionary defined "incarceration" as "imprisonment" or "confinement in a jail or penitentiary." *Incarceration*, BLACK'S LAW DICTIONARY (6th ed. 1990). It defined "confinement" as "[s]tate of being confined; shut in; imprisoned; detention in penal institution. Confinement may be by either a moral or physical restraint, by threats of violence with a present force, or by physical restraint of the person." *Confinement*, BLACK'S LAW DICTIONARY (6th ed. 1990). Its most recent definition of "incarceration" is "[t]he act or process of confining someone; imprisonment." *Incarceration*, BLACK'S LAW DICTIONARY (12th ed. 2024). Its most recent definition of "confinement" is "[t]he act of imprisoning or restraining someone; the quality, state, or condition of being imprisoned or restrained." *Confinement*, BLACK'S LAW DICTIONARY (12th ed. 2024). The Merriam-Webster dictionary defines "incarceration" as "confinement in a jail

or prison," *Incarceration*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/incarceration (last visited Apr. 22, 2026); "confinement" as "an act of confining" or "the state of being confined," *Confinement*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/confinement (last visited Apr. 22, 2026); and "confine" as "to hold within a location" or "to keep within limits," *Confine*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/confine (last visited Apr. 22, 2026). Ramirez-Aguilar's two-year sentence of community control required him to "remain confined to [his] approved residence except for one half hour before and after [his] approved employment, public service work, or any other special activities approved by [his] officer," which is plainly a type of confinement.

Accordingly, whether this Court applies *Herrera* as binding precedent or analyzes the plain meaning of the statute, Ramirez-Aguilar's sentence of two years of community control constituted at least a one-year term of imprisonment under the INA. Thus, Ramirez-Aguilar was convicted of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F), which renders him statutorily ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3). Accordingly, we deny his petition.

**PETITION DENIED.**